# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

ANGEL NAVARRO, EVELYN DAHI, RAFAEL  :
RAMIREZ, and WILKINS MARTINEZ, on behalf of
themselves, individually, and on behalf of all others  :
similarly-situated,                                              Case No. 15-cv-00064 (AJP)

                                 :

                    Plaintiffs,

                                 :

       -against-

                                 :

BRUCKNER FOREVER YOUNG SOCIAL ADULT
DAY CARE INC., and EASTCHESTER'S FOREVER  :
YOUNG SOCIAL ADULT DAY CARE INC., and
QUEENS FOREVER YOUNG SOCIAL ADULT  :
DAY CARE INC., and FOREVER YOUNG SOCIAL
ADULT DAY CARE INC., and FELIX  :
GERSHKOVITCH, in his individual and professional
capacities,  :

                    Defendants.

-----------------------------------------------------------------------x

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

      This Settlement Agreement and Release is entered into by and between Named Plaintiffs Angel Navarro, Evelyn Dahi, Rafael Ramirez, and Wilkins Martinez (the "Named Plaintiffs"), as well as Opt-in Plaintiffs Freddy Batista, Eli Cepeda, John Cruz, William Duenas, Eric Espaillat, Javiar Espinal, Daker Fabien, Juan Ferraras, Miguel Gaspar, Diego Mateo, Eddy Nieves, Kevin Nieves, Jupanky Pimentel, O'Neil Satchwell, David Sinclair, William Troche-Gonzalez, Tommy Vasquez and Flex Yahweh (the "Opt-in Plaintiffs," all of whom have authorized the Named Plaintiffs to execute this Agreement on their behalf) (together with the Named Plaintiffs as "Plaintiffs") and by Defendants (as defined below).

1.      RECITALS AND BACKGROUND

      WHEREAS, Plaintiff Rafael Mota filed a Complaint on January 5, 2015, in the United States District Court for the Southern District of New York bearing Case No. 15-cv-00064, alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), on behalf of himself and all those similarly situated;

      WHEREAS, Plaintiff Rafael Mota settled his individual claims with Defendants on May 27, 2015;

      WHEREAS, Named Plaintiffs filed an Amended Complaint on July 27, 2015 containing

similar allegations as Mota;

WHEREAS, the Named Plaintiffs, on Defendants' consent, plan to file a Motion with the Court seeking to certify the Litigation for settlement purposes only as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and as a collective action pursuant to 29 U.S.C. § 216(b) (the "Motion") with respect to all drivers (defined below as "Class Members"), who worked for Defendants' adult day cares located at 80 Bruckner Boulevard, Bronx, New York; 2050 Eastchester Road, Bronx, New York; 231-10 Hillside Avenue, Queen Village, New York; and 3305 3rd Avenue, Bronx, New York during the Relevant Time Period (as defined below);

WHEREAS, the Parties (as defined below) have engaged in and completed extensive discovery during the course of the Litigation (as defined below) in connection with the potential settlement of this matter;

WHEREAS, Plaintiffs and Defendants also participated in a mediation session on October 1, 2015, which was conducted by Martin Scheinman, Esq., an experienced and well-known mediator who has successfully negotiated settlements in similar wage and hour class and collective actions in New York, at the end of which the Parties reached an agreement on all material terms contained herein;

WHEREAS, Defendants denied and continue to deny all of the material allegations made by Plaintiffs in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, Defendants have agreed to disseminate a notice of settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure to all Class Members;

WHEREAS, the purpose of this Agreement is to settle fully and finally all FLSA and NYLL Claims (as defined below), between the Plaintiffs, the Class Members, and Defendants, including all claims asserted in the Litigation in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiffs' Counsel has analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on the Plaintiffs and Class Members, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiffs and Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.  **DEFINITIONS**

The defined terms set forth in this Agreement as used below and above have the following meanings ascribed to them.

1.1  **"Action" or "Litigation."** The Action or Litigation shall mean the case referenced above filed in the United States District Court for the Southern District of New York styled <u>Navarro, et al. v. Bruckner Forever Young Social Adult Day Care Inc., et al.</u>, Case No. 15-cv-00064 (AJP).

1.2  **"Administrator" or "Claims Administrator."** The Administrator or Claims Administrator refers to the Administrator selected by the Plaintiffs to mail the Notices and administer the Settlement.

1.3  **"Agreement."** Agreement means this Settlement Agreement and Release.

1.4  **"Class" or "Class Member(s)."** Class or Class Members shall be defined as: all drivers employed at the social adult day cares located at 80 Bruckner Boulevard, Bronx, New York; 2050 Eastchester Road, Bronx, New York; 231-10 Hillside Avenue, Queens Village, New York; and/or 3305 3rd Avenue, Bronx, New York, who work or have worked between January 5, 2009 and December 30, 2015, who do not opt-out of the Litigation as explained below.

1.5  **"Class Counsel" or "Plaintiffs' Counsel."** Class Counsel or Plaintiffs' Counsel shall mean Borrelli & Associates, P.L.L.C.

1.6  **"Class Member List."** The Class Member List shall mean a list of all Class Members, identified by: (i) name; (ii) last known address; and (iii) dates of employment during the Relevant Time Period; contained in a confidential document that the Defendants shall provide to Plaintiffs' Counsel and the Claims Administrator. The Class Member List is to be used by Plaintiffs' Counsel and the Claims Administrator to effectuate settlement, and may not be copied, disseminated or used for any other purpose.

1.7  **"Court."** The Court shall mean the United States District Court for the Southern District of New York, the Honorable Andrew J. Peck presiding.

1.8  **"Days."** Unless otherwise specified, days shall mean calendar days.

1.9  **"Defendants."** The Defendants are Bruckner Forever Young Social Adult Day Care Inc., Eastchester's Forever Young Social Adult Day Care Inc., Queens Forever Young Social Adult Day Care Inc., Forever Young Social Adult Day Care Inc. and Felix Gershkovitch (collectively as "Forever Young").

1.10  **"Defense Counsel."** Defense Counsel shall be Ira Sturm of Raab, Sturm & Ganchrow, LLP and Anna Rusanov of Anna Rusanov, P.C.

1.11  **"Fairness Hearing."** The Fairness Hearing shall mean the hearing before the Court relating to the Motion for Final Approval, unless otherwise scheduled by the Court

without the filing of a motion.

1.12 **"Final Effective Date."** The Final Effective Date shall be thirty (30) days after the Court has entered a Final Order approving this Agreement, provided the time to appeal from the Final Order has expired and no notice of appeal has been filed. In the event a notice of appeal is filed, the Final Effective Date shall be the latest of when any of the following has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

1.13 **"Final Order."** The Final Order shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, distribution of the settlement proceeds from the Settlement Account, approval of professional fees and costs, and causing dismissal of this action.

1.14 **"FLSA Claims."** The FLSA Claims shall mean all wage and hour claims that could have been asserted pursuant to the Fair Labor Standards Act by or on behalf of Plaintiffs or the Class Members. Released FLSA Claims include, but are not limited to, all claims under federal law for unpaid overtime and minimum wages, liquidated damages, and attorneys' fees, expenses and costs related to such claims.

1.15 **"NYLL Claims."** The NYLL Claims shall mean all wage and hour claims that could have been asserted under New York State law by Plaintiffs or the Class Members. Released New York State Law Claims include, but are not limited to, all claims under state law for unpaid overtime wages, minimum wage, Wage Theft Prevention Act Penalties, and any other related wage and hour claims, liquidated damages, interest, and attorneys' fees, expenses and costs related to such claims.

1.16 **"Implementing Order."** The Implementing Order shall mean the Order entered by the Court: (i) effectuating the settlement; (ii) approving the Notice and Claim forms and; (iii) directing the manner and timing of publishing the Notice to the Class.

1.17 **"Notice" or "Notices."** Notice or Notices shall mean the Court–approved Notice of Proposed Settlement including notice of an opportunity to opt-out and/or object to the proposed settlement.

1.18 **"Objector."** An Objector shall mean any Class Member who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.19 **"Opt-out Statement."** An Opt-out Statement is a written signed statement that a Class Member has decided to opt-out and not be included in this Agreement. Any Class Member who does not submit an Opt-out Statement waives and releases all FLSA and NYLL claims, even if he or she does not cash his or her settlement check(s) in this matter. A Class Member who submits an Opt-out Statement retains any FLSA and/or

NYLL Claims that would otherwise be released pursuant to this Agreement.

1.20 **"Parties."**  The Parties shall refer to Plaintiffs, Defendants and the Class Members collectively.

1.21 **"Named Plaintiffs."**  Named Plaintiffs shall mean Angel Navarro, Evelyn Dahi, Rafael Ramirez, and Wilkins Martinez.

1.22 **"Opt In Plaintiffs."**  Opt In Plaintiffs shall mean Freddy Batista, Eli Cepeda, John Cruz, William Duenas, Eric Espaillat, Javiar Espinal, Daker Fabien, Juan Ferraras, Miguel Gaspar, Diego Mateo, Eddy Nieves, Kevin Nieves, Jupanky Pimentel, O'Neil Satchwell, David Sinclair, William Troche-Gonzalez, Tommy Vasquez and Flex Yahweh.

1.23 **"Relevant Period" or "Relevant Time Period."**  The Relevant Period or Relevant Time Period means for any time between January 5, 2009 and December 30, 2015.

1.24 **"Settlement Account."**  The Settlement Account shall mean a qualified settlement fund established by the Administrator, pursuant to this Agreement, at a bank reasonably acceptable to the Parties.  The Settlement Account shall contain the aggregate of all Claims, enhancement awards, service awards, professional fees and costs as authorized by the Court in the Final Order, but in no event shall the Settlement Account exceed the Settlement Fund.

1.25 **"Settlement Checks."**  The Settlement Checks shall mean the checks issued to Class Members from the Settlement Account by the Administrator as calculated by the Administrator in accordance with this Agreement.

1.26 **"Settlement Fund."**  The Settlement Fund shall mean the maximum aggregate amount that can be paid by Defendants pursuant to this Agreement and includes enhancement awards, professional fees, costs and expenses.  Under no circumstances shall the Settlement Fund exceed Four Hundred Seventy-Five Thousand Dollars ($475,000.00), excluding employer's share of payroll taxes, regardless of the number of Class Members.

2. **INITIAL PROCEDURAL ISSUES**

2.1 **Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms.

2.2 **Retention of the Administrator.**  Plaintiffs shall engage an Administrator to mail Notices and administer the settlement.

2.3 **Responsibilities of the Administrator.**  The Administrator shall be responsible for:

A.    preparing, printing and disseminating the Notice to the Class;

B.    copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by

any Party;

C.   promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections, or other written or electronic communications from the Class which the Administrator receives;

D.   keeping track of Opt-out Statements including maintaining the original mailing envelope in which the request was mailed;

E.   mailing all required tax forms to Class Members and to Class Counsel as provided herein;

F.   setting up a Settlement Account to be used for the distribution of all Settlement Checks to Class Members, Plaintiffs' Counsel, the Claims Administrator, and to Plaintiffs;

G.   calculating the amount of each Class Member's Settlement Check;

H.   calculating the employer-side payroll taxes required pursuant to the settlement;

I.   calculating and paying each Class Member's share of payroll taxes and preparing appropriate tax forms for Defendants and for each Class Member;

J.   mailing the Settlement Checks to Class Members;

K.   ascertaining current address and addressee information for each Notice returned as undeliverable and the mailing of Notice;

L.   responding to inquiries of the Class regarding procedures for filing objections and Opt-out Statements;

M.   referring to Plaintiffs' Counsel all inquiries by the Class regarding matters not within the Administrator's duties specified herein;

N.   responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties specified herein;

O.   promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

P.   maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

Q.   confirming in writing to Plaintiffs' Counsel and Defense Counsel its completion of the administration of the settlement;

R.   timely responding to communications from the Parties or their counsel;

S.      preparing and mailing all notices required pursuant to the Class Action Fairness Act; and

T.      such other tasks the Parties mutually agree.

In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall certify jointly to Plaintiffs' Counsel and to Defense Counsel (a) a list of all Class Members; (b) a list of all Class Members who filed timely objections; and, (c) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period. The Administrator shall also provide the Parties with an updated address list for the Class. Throughout the period of claims administration, the Administrator will provide reports to the Parties upon request by either Party regarding the status of the mailing of the Notices to the Class, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

**2.4**    **Notice.**  The Notice will inform Class Members about this Settlement and will also advise them of the opportunity to object to, opt-out of, do nothing and remain in the Class in order to obtain a Settlement Check pursuant to this Agreement, and/or to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Implementing Order by the court, the Administrator will mail to all Class Members, via First Class United States Mail, the Court–approved Notices of Proposed Settlement and Fairness Hearing. The Administrator will take all *reasonable steps* to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable, including at least one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Administrator will notify Plaintiffs' Counsel and Defense Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5**    **Access to the Administrator**. The Parties will have equal access to the Administrator throughout the claims administration period. Plaintiffs' Counsel and Defense Counsel agree to provide the Administrator with all accurate information necessary to reasonably assist the Administrator in locating the Class Members.

**2.6**    **Approval of the Implementing Order.**

(A)    Plaintiffs' Counsel shall apply to the Court to publish the proposed Notice. The proposed Notice and Implementing Order shall be drafted by Plaintiffs' Counsel.

(B)    The proposed Implementing Order will seek the setting of a deadline of sixty (60) days from the initial mailing of Notice to the Class: (a) to file Opt-out Statements; and/or (b) to become Objectors. The Proposed Implementing Order shall also seek to set a date for the Fairness Hearing for Final Approval of the Settlement, which shall be no earlier than ninety (90) days following the date that the Court enters the proposed Implementing Order.

(C)    Plaintiffs' Counsel will inform the Court of the intended process to obtain a "Final Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) approve the proposed notice to the Class; (3) incorporate the terms of the Release, as described herein; (4) dismiss the Litigation with prejudice; and (5) award Plaintiffs' Counsel fees, expenses and costs.

(D)    The Parties will work together, diligently and in good faith, to expeditiously obtain an Implementing Order, Final Order, and Final Judgment and Dismissal with prejudice.  Any disputes which arise between the Parties related to the Parties' efforts to obtain a Final Order, Final Judgment, and Dismissal with prejudice shall be referred to Martin Scheinman, Esq. for resolution.

**2.7    Notice to the Class.**

(A)    Within seven (7) days of the Court's entry of the Implementing Order, Defense Counsel will provide Plaintiffs' Counsel and the Administrator, in electronic form and for all Class Members, the Class Member List.    All information provided regarding the Class will be treated as confidential information by Plaintiffs' Counsel and the Administrator.  Said information will not be used by Plaintiffs' Counsel and the Administrator for any purpose other than to effectuate the terms of settlement.

**2.8    Opt-outs.**

(A)    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Administrator that states that he or she is opting out of the settlement, and include his or her name, address, and telephone numbers, and a statement indicating his or her intention to opt-out, such as: "I opt out of the Forever Young wage and hour settlement." ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked or received by the Administrator within sixty (60) days after the initial mailing of Notice to the Class.

(B)    The end of the time period to opt-out of the settlement ("Opt-out Period") shall be sixty (60) days after the initial mailing of Notice to the Class.

(C)    The Administrator will send a final list of all Opt-out Statements to Plaintiffs' Counsel and Defense Counsel before the Fairness Hearing.  The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(D)    Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Judgment in this case, and have any FLSA and NYLL Claims released and dismissed.  Defendants will fund the Settlement

Account with the aggregate amount allocated to each Claimant as set forth in this Agreement. **Defendants shall have no obligation to pay any Class Member who Opts-out of this settlement as set forth in this Agreement.** Defendants shall retain the right, in the exercise of their sole discretion, to nullify the settlement by giving notice, in writing, to Class Counsel and the Court, at any time no later than sixty-seven (67) days after the Initial Mailing of Notice to the Class, if seven (7) or more Class Members opt-out of the Settlement. In the event of such a rescission, Defendants shall be responsible for paying all of the Settlement Administrator's fees, and no party may use the fact that the Parties agreed to settle this case as evidence of Defendants' liability in this lawsuit or the lack thereof. Defendants retain the right to contest whether the Litigation should be maintained as a class action and to contest the merits of the claims being asserted in the Litigation.

**2.9     Objections to Settlement.**

(A)     Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be mailed to the Administrator via First-Class United States Mail post-marked by sixty (60) days after the initial mailing of Notice to the Class.  The statement must include all reasons for the objection, and any supporting documentation.  The statement must also include the name, address, and telephone number for the Class Member making the objection.  The Administrator will stamp the date received on the original and send copies of each objection and supporting documents to Plaintiffs' Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection.

(B)     An Objector also has the right to appear at the Fairness Hearing, either in person or through counsel hired by the Objector at the Objector's expense.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objections at any time.  An Objector is a Class Member and an objection does not constitute the filing of an Opt-out Statement.

**2.10    Fairness Hearing and Motion for Final Approval and Dismissal.**  At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute the Settlement Checks to the Class Members; (3) order the attorneys' fees, expenses and costs to be paid to Plaintiffs' Counsel out of the Settlement Account; (4) order the dismissal with prejudice of all FLSA and NYLL Claims by all Class Members who did not opt-out; (5) order entry of Final Judgment in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

9

2.11   **Effect of Failure to Grant Final Approval.**   In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Litigation will proceed as if no settlement had been attempted.

3.     **SETTLEMENT TERMS**

3.1    **Settlement Fund Computation and Allocations.**   The Settlement Fund shall be a total of $475,000.00.  Individual Class Members' proportionate shares of the Settlement Fund shall be computed pursuant to the formula below:

(A)   Class Members shall receive 1 point for every week that they worked as a driver during the Relevant Time Period.

(B)   The Settlement Fund, after deductions for court approved attorneys' fees, settlement administration fees, enhancement awards, and all other court approved expenses or disbursements, will be divided by the aggregate number of points accrued by all of the Class Members and any points that would have been attributable to any individuals who opted-out of the settlement had they remained Class Members ("Point Value").

(C)   Each Class Member's total points will be multiplied by the Point Value to determine his or her "Individual Settlement Amount."

(D)   Only Class Members who do not timely Opt-out under the terms of this Agreement shall be entitled to receive their Individual Settlement Amount.

(E)   Enhancement Awards to Named Plaintiffs and Opt-in Plaintiffs.  Class Counsel shall seek Court Approval of the payment of Enhancement Awards to Named Plaintiffs in consideration for work performed on behalf of the Class, in the amount of $3,500.00 for each person, and to the Opt-in Plaintiffs in the amount of $1,500.00 for each person (the "Enhancement Awards").  Defendants shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided it does not increase the Settlement Fund.  In the event the Court enquires about Defendants' position on the issue of an enhancement award, Defendants will inform the Court that they take no position on the issue so long as it does not increase the Settlement Fund. The substance of Plaintiffs' application for the Enhancement Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation.   The outcome of the Court's ruling on the application for an Enhancement Award shall not terminate this Agreement or otherwise affect the Court's Final Approval.

(F)   Maximum Payment.  The Parties expressly acknowledge that Defendants shall not be required to pay more than the Settlement Fund of Four Hundred Seventy-Five Thousand Dollars ($475,000.00) to the Class Members, Plaintiffs' Counsel, the Claims Administrator, Plaintiffs, or to anyone else (excluding employer's share of payroll taxes due under this Agreement), regardless of the number of Class

10

Members included in this settlement.

(G)    Installment Payments.  The Settlement Fund shall be funded and paid in three (3) payments.  The first payment of $300,000.00 will be made by Defendants no later than thirty (30) days after the Court grants preliminary approval of the settlement ("First Payment"), the second payment of $87,500.00 will be made no later than ninety (90) days after the Court grants preliminary approval of the settlement ("Second Payment"), and the third payment of $87,500.00 will be made no later than one hundred eighty (180) days after the Court grants preliminary approval of the settlement ("Third Payment").  The Settlement Amount shall be funded to the Administrator to be held in escrow and released upon the Final Effective Date or receipt of the Third Payment, whichever is later.  If the Final Effective Date occurs after either or all of the above dates, any affected released payment(s) shall be delayed until no later than ten (10) business days after the Final Effective Date.

(H)    Mailing of Settlement Checks.

    (i)    The Claims Administrator shall, within ten (10) days after the Final Effective Date has passed or within (10) days after the Third Payment of the Installment Payments is made, whichever is later, distribute the Plaintiffs' Individual Settlement Amounts, Plaintiffs' Counsels' approved professional fees and expenses, any Enhancement Awards for Named Plaintiffs and Opt-in Plaintiffs, and the Claims Administrator's fee.  Class Members will not have to submit a claim form to receive a Settlement Check.

    (ii)    Class Members shall have one hundred eighty (180) days after their payment is mailed to cash the respective Settlement Checks.  Within two hundred ten (210) days after the Class Administrator mails the initial Settlement Checks, for any uncashed Settlement Checks, amounts attributable to individuals who opted-out as set forth in this Agreement, and all other amounts remaining in the fund, the Claims Administrator will distribute these remaining amounts among the Class Members who already cashed their checks on a pro rata basis.  After ninety (90) days of mailing these second checks, the Claims Administrator shall make a *cy pres* charitable donation of any unclaimed money from the Settlement Fund, to a charity determined by Defendants' Counsel.

**3.2**    **Professional Fees and Costs.**  At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees not to exceed one-third (1/3) of the Settlement Fund, or One Hundred Fifty-Eight Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($158.333.33), as well as for reimbursement of their actual litigation expenses and costs.  These fees shall come out of the Settlement Fund.  Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court and provided it does not increase the Settlement Fund.  If the fees and/or costs are reduced by the Court, any reduced amounts shall remain in the settlement pool to be distributed to Plaintiffs and the Class Members.

The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval.

**3.3**   **Claims Administrator's Fees.**   As part of Plaintiffs' motion for final approval of the settlement, Class Counsel will submit a declaration from the Claims Administrator detailing the administration process, as well as the costs of administration.   The Claims Administrator Fees shall be deducted from the Settlement Fund prior to distribution of any monies to the Class Members, Plaintiffs' Counsel and/or the Plaintiffs.

**3.4**   **Tax Characterization.**

(A)   Except as set forth below, settlement payments to the Class Members will be allocated as follows for tax purposes: (i) 50% in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting, and (ii) 50% in consideration for liquidated damages and interest as non-wage payments subject to 1099 reporting.   All Enhancement Awards shall be subject to 1099 reporting.

(B)   All Wage Payments (*i.e.,* the portion set forth in Section 3.4(a)(i) above) shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W2.   All Non-Wage Payments (*i.e.,* the portion set forth in Section 3.4(a)(ii) above) shall be made without any tax withholdings and shall be reflected on a Form 1099 issued to each Class Member.   Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without any withholdings. Class Counsel will receive a Form 1099 for this payment.   Any Enhancement Award Payment shall be made without any withholdings and reported to the IRS via a Form 1099.   Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in this Section 3.4.

(C)   Defendants shall pay the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the Wage Payments.   The Claims Administrator shall be responsible for making all withholdings from employees' settlement payments required pursuant to any federal, state, or local tax law or regulation, with respect to the Wage Payments.

**3.5**   **Hold Harmless.**

(A) With respect to payments received pursuant to this Agreement that are not

characterized as W-2 wage income, the Plaintiffs and Class Members assume full responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that any individual or entity and/or Defendants are liable for any failure by any Plaintiff or Class Member to pay federal, state or local income or employment or payroll taxes with respect to any payment received pursuant to this settlement that is not characterized as W-2 wage income, Plaintiffs and the Class agree to hold Defendants harmless, and indemnify Defendants from any payments the Defendants may be required to make (including any payments for interest and penalties) to any taxing authority resulting from the issuance of an IRS tax form 1099 and any Plaintiff's and/or Class Member's failure to pay any taxes that any such individual or entity owes related to said income.

(B) With respect to payments received pursuant to this Agreement that are characterized as Attorneys' Fees, Plaintiffs and Class Counsel assume responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that Class Counsel is liable for any federal, state or local taxes or contributions with respect to any payment received pursuant to this settlement that is characterized as Attorneys' Fees, Class Counsel shall be responsible for said payments and shall hold Defendants harmless for said payments.

4.    **RELEASE**

4.1  **Release of Claims.**

(A)    Upon the Order Granting Final Approval, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt-out of this Agreement, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendants, Defendants' present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, members, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them (collectively, the "Releasees"), from any and all claims for any wage and hour violations that may have occurred arising from or relating to each Class Member's employment or engagement with Forever Young under federal,

13

state, and/or local law, including but not limited to, any and all claims for unpaid overtime or minimum wage pay, failure to maintain and furnish employees with proper wage records, and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under federal, New York state, and/or local wage and hour laws (including but not limited to the Fair Labor Standards Act ("FLSA"), New York Labor Law, New York Code of Rules and Regulations, and the New York Wage Theft Prevention Act), through December 30, 2015. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees' and costs.

(B)   All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:

By endorsing this check, I consent to join the Litigation against Defendants styled <u>Navarro, et al. v. Bruckner Forever Young Social Adult Day Care Inc., et al.,</u> Case No. 15-cv-00064 (AJP), and release Defendants from all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law and/or any other applicable wage and hour law, rule or regulation brought or which could have been brought in the Litigation, including but not limited to overtime claims. Any modification or amendment of the above-language by the Class Member, at Defendants' discretion, may not be accepted, and may void the Settlement Check."

(C)   The Claims Administrator shall provide Defendants signed copies of each Settlement Check after they have been cashed.

(D)   No Assignment. Named Plaintiffs, on behalf of the Opt-in Plaintiffs and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

(E)   Non-Admission of Liability. By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or

omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

(F)     Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, the Plaintiffs and the Class Members hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of the Class.  Plaintiffs further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Plaintiffs' Counsel's representation in the Litigation.

## 5.     INTERPRETATION AND ENFORCEMENT

5.1     **Cooperation Between the Parties; Further Acts.**   The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2     **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.3     **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.4     **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.5     **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.6     **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.7     **Blue Penciling.**  If any non-substantive provision of this Agreement is held by a court of

competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect. Should any substantive provision of this Agreement be deemed void, voidable, unlawful or unenforceable, the affected party may void the entire Agreement upon written notice to either Class Counsel or Defense Counsel within seven (7) days of that occurring.

5.8    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.9    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

5.10   **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.11   **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its full execution and final approval by the Court.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.12   **Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS:**

Bruckner Forever Young Social Adult Day Care Inc., Eastchester's Forever Young Social Adult Day Care Inc., Queens Forever Young Social Adult Day Care Inc., Forever Young Social Adult Day Care Inc., and Felix Gershkovitch.

By: _____
    Felix Gershkovitch,
    On behalf of himself and all Defendants

Dated: _____

_____
Angel Navarro,
On behalf of himself and all opt in Plaintiffs

Dated: 12/30/15

_____
Evelyn Dahi
On behalf of herself

Dated: _____

_____
Rafael Ramirez
On behalf of himself

Dated: _____

_____
Wilkins Martinez
On behalf of himself

Dated: _____

17

**WE AGREE TO THESE TERMS:**

**Bruckner Forever Young Social Adult Day Care Inc., Eastchester's Forever Young Social Adult Day Care Inc., Queens Forever Young Social Adult Day Care Inc., Forever Young Social Adult Day Care Inc., and Felix Gershkovitch.**

Angel Navarro,
On behalf of himself and all opt in Plaintiffs

Dated: _____

By: _____
    Felix Gershkovitch,
    On behalf of himself and all Defendants

Dated: _____

*E. Dahi*
Evelyn Dahi
On behalf of herself

Dated: _12-29-15_

Rafael Ramirez
On behalf of himself

Dated: _____

Wilkins Martinez
On behalf of himself

Dated: _____

17

**WE AGREE TO THESE TERMS:**

**Bruckner Forever Young Social Adult Day Care Inc., Eastchester's Forever Young Social Adult Day Care Inc., Queens Forever Young Social Adult Day Care Inc., Forever Young Social Adult Day Care Inc., and Felix Gershkovitch.**

By: _____
    Felix Gershkovitch,
    On behalf of himself and all Defendants

Dated: _____

_____
Angel Navarro,
On behalf of himself and all opt in Plaintiffs

Dated: _____

_____
Evelyn Dahi
On behalf of herself

Dated: _____

_____
Rafael Ramirez
On behalf of himself

Dated: _12/29/15_____

_____
Wilkins Martinez
On behalf of himself

Dated: _____

17

**WE AGREE TO THESE TERMS:**

**Bruckner Forever Young Social Adult Day Care Inc., Eastchester's Forever Young Social Adult Day Care Inc., Queens Forever Young Social Adult Day Care Inc., Forever Young Social Adult Day Care Inc., and Felix Gershkovitch.**

By: _____

    Felix Gershkovitch,
    On behalf of himself and all Defendants

Dated: _____

_____
Angel Navarro,
On behalf of himself and all opt in Plaintiffs

Dated: _____

_____
Evelyn Dahi
On behalf of herself

Dated: _____

_____
Rafael Ramirez
On behalf of himself

Dated: _____

_____
Wilkins Martinez
On behalf of himself

Dated: _12/30/2015_____

17

**WE AGREE TO THESE TERMS:**

**Bruckner Forever Young Social Adult Day Care Inc., Eastchester's Forever Young Social Adult Day Care Inc., Queens Forever Young Social Adult Day Care Inc., Forever Young Social Adult Day Care Inc., and Felix Gershkovitch.**

By: _____
Felix Gershkovitch,
On behalf of himself and all Defendants

Dated: __12/30/15_____

_____
Angel Navarro,
On behalf of himself and all opt in Plaintiffs

Dated: _____

_____
Evelyn Dahi
On behalf of herself

Dated: _____

_____
Rafael Ramirez
On behalf of himself

Dated: _____

_____
Wilkins Martinez
On behalf of himself

Dated: _____

17